## WASHINGTON COUNTY.

## MARCH TERM, 1834.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
    "    SAMUEL S. PHELPS, ⎫
    "    JACOB COLLAMER, ⎬ *Assistant Justices.*
    "    JOHN MATTOCKS, ⎭

WASHINGTON,
*March,*
1834.

### LOUISA PHELPS *vs.* DANIEL CULVER.

An indenture of apprenticeship becomes *voidable* merely, upon the decease of the master; and so of an assignment.

If the apprentice serve the administrator or assignee, he acquires the right and incurs the duties of an apprentice; and if he leave the service of the administrator, he cannot avoid the indenture, so as to recover for his services, upon a *quantum valebat.*

An apprentice bound by the overseers of the poor, is assignable, without his assent. So, if the master die, he may be retained in the service of the administrator, with the assent of the overseers.

Action of assumpsit for work and labor. Plea general issue.

The plaintiff in support of the issue adduced evidence tending to prove that she had labored for the defendant about three years, ending in May now last past; that she enjoyed good health during that time; that she worked with the defendant on his farm in the spring, summer and fall, in planting, haying and harvesting. The plaintiff is now about seventeen years of age. On the sixth day of May, A. D: 1832, and after plaintiff had left the service of defendant, Andrew Dodge was, by the probate court for the district of Washington, duly appointed guardian to the plaintiff, and before the commencement of this action notified the defendant of said appointment, and demanded of the defendant pay for the services of the plaintiff. But defendant refused to pay any thing for her labor.

The defendant on his part, offered evidence tending to prove that on the 9th day of March, A. D. 1824, Nathaniel Car-

penter, then overseer of the poor in the town of Middlesex,
in Washington county, bound the said Louisa, who then was a
town pauper, belonging to said Middlesex, to Ziba Wood-
worth, then of Montpelier, by written indenture, until she
should arrive at the age of eighteen years ; that the said Lou-
isa went to live with the said Ziba Woodworth, and con-
tinued in his family until he deceased, which was in
November, A. D. 1826 ; that the said defendant was after-
wards, in 1827, duly appointed administrator on the estate of
the said Ziba Woodworth, and as administrator, at the request
of, and by agreement with John Woodworth, son of the said
Ziba Woodworth, took the said Louisa into his family with
her consent, where she continued to reside and labor for him,
as his servant, up to the time she left him, in May A. D.
1832. The defendant contracted with said Woodworth to
perform the requirements of the indenture and pay to plaintiff
the articles stipulated therein to be paid to her, and indemnify
the estate of said Woodworth against the covenants in said
indenture. To the admission of this evidence the plaintiff
objected, but the objection was overruled and the evidence
admitted. The plaintiff excepted to this decision of the
court.

The indenture binds said Louisa to serve until the age of
18, said Woodworth to furnish her with sufficient meat, drink,
education, clothing, &c. The defendant further gave evidence
tending to prove that the father of Louisa left his family in
Middlesex about ten or twelve years ago, and has never re-
turned to them or afforded them any assistance whatever ;
that he is supposed to be now living in the state of Connecti-
cut ; that his friends have, within two years now last past,
received letters from him, known to be his hand writing, dated
in Connecticut. David Harrington of Middlesex, testified
that he was overseer of the poor in Middlesex in 1829, and
that he has an impression, that during that year, he heard from
some quarter, that the said Louisa was living with the defend-
ant, and had no objection to it; but will not swear that he heard
the said Louisa lived with defendant until after she left him last
May. No other evidence was offered to prove that the said
Louisa labored with said Culver with the knowledge and con-
sent of the overseer of the poor of Middlesex.

The plaintiff further offered to prove, that David Harring-
ton, the witness called by defendant, had stated to the plaintiff's

WASHINGTON,
March,
1834.

Louisa Phelps
vs.
Daniel Culver.

guardian, Andrew Dodge, just before he was called into court, that he had never heard of the said Louisa living with defendant until after she left him last May. To the admission of the evidence defendant objected and the same was excluded by the court, to which the plaintiff excepted.

The plaintiff further offered to prove that she was unwilling to serve the defendant, and left him in 1830, and that defendant found her and told her she was bound to serve him, and took her back, where she remained until she left him in May, 1832. To which the defendant objected. The evidence was excluded by the court, to which plaintiff excepted.

The court decided and so instructed the jury, that the aforesaid indenture did not become void by the decease of said Woodworth, but voidable merely; that if the overseers of said town of of Middlesex assented to, or acquiesced in the arrangement, the same was valid; that if the plaintiff performed the services in compliance with said agreement, and with the assent of said overseers, it was not competent for her to avoid the indenture and recover upon a *quantum meruit,* for her services, and that the present guardian, although he might avoid the indenture after his appointment could not avoid it as to services previously rendered under it with the assent of the overseer. A verdict was returned for the defendant. To this charge also, the plaintiff excepted, whereupon the case was ordered to the supreme court for further adjudication.

*Upham and Smith for plaintiffs.*—1. The indenture by which the plaintiff was bound to Ziba Woodworth, in his life time, by the overseers of Middlesex, was improperly admitted in evidence to support the issue on the part of the defendant.

The apprenticeship, we insist, was dissolved by the death of Ziba Woodworth, the master, in November, A. D. 1826.

In *Rex* vs. *Peck,* (1 Salk. 66.) Eyre, J. said, "That an apprenticeship was a personal trust, between the master and servant, and determined by the death of either of them." —2 Petersci Abr. 33.—Reeves Dom. Rel. 345.—1 Swift's Dig. 66.

It is also settled, that the right which the master acquires to the service of his apprentice, can never be assigned to another person. It is incompatible with the nature of the contract,

which is altogether fiduciary.—2 Petersd. Abr. 31, 32, and cases there cited.—Reeves Dom. Rel. 344.—1 Swift's Dig. 62 ; 3 Bac. Abr. 555.—1 Salk. 67.

WASHINGTON,
March,
1834.

Louisa Phelps
vs.
Daniel Culver.

It is said in some of the books, that an apprentice is not strictly assignable and transmissible ; yet if he continue with the consent of all parties and *his own*, it ⬤ a continuation of the apprenticeship. And it has been adjudged, in a series of cases, that for the purpose of gaining a settlement, the service of an apprentice under an assignment, is sufficient.—1 Batts. 582.—11 East. 95.—6 T. R. 454.—2 Petersd. Abr. 32 and cases there cited.—Doug. 518.

The assignment is a good agreement between the first and second master, that the apprentice should serve the time with the second. It is a service as apprentice, and so makes a good settlement.—1 Swift's D. 63.—2 Petersd. Ab. 32.—1 Salk. 68.

The ⬤tion of master and servant all the while exists, and the apprentice is serving his first master under his indenture of apprenticeship. But the death of the master cancels the indentures, and dissolves the apprenticeship. The relation of master and servant no longer exists, and the apprentice is at liberty to serve whom he pleases. He is under no obligation to serve the executor of his master ; neither has the executor any right to control his person or demand his services.—2 Petersd. Ab. 34.—Reeves Dom. Rel. 345.

No settlement can be gained by an apprentice by serving forty days under an assignment, unless he serve by the consent of all parties, and his own.—Petersd. Abr. 31—Ib. 32, 34.—*Rex* vs. *Arnbey*, 3 Barn. and Ald. 384.—14 Petersd. 342.

But again ; suppose the plaintiff, after the death of her master, consented and contracted to serve out the remainder of her time with his administrator, on his promise to pay her the sum stipulated in the indenture. Had she not a right, being an infant, to avoid the contract, and recover a reasonable compensation for her services ? Most certainly she had.—*Moses* vs. *Stevens*, 2 Pick. Rep. 332.

The contract she has avoided by leaving his service before the time expired, and by bringing this action to recover for her labor.

2. The testimony offered by plaintiff to impeach David Harrington, a witness on the part of the defendant, was improperly rejected by the county court. It is well settled by the authorites, that the credit of a witness may be impeached either by cross-examination or by general evidence affecting his credit, or by evidence *that he has before done or said that which is inconsistent with his evidence on the trial.*—3 Starkie's Ev. 1753.—Swift's Ev. 123.

Louisa Phelps
*vs.*
Daniel Culver.

3. The evidence offered by the plaintiff to show that the defendant held her in his service against her consent, was improperly rejected in the court below.

The ground assumed by the defendant in the county court, made it necessary for him to prove that the plaintiff not only entered the service of the defendant, but that she continued to serve him with the consent of all parties and her own. And it appears from the bill of exceptions, that evidence tending to prove the fact was adduced by the defendant. As it not, then, competent for the plaintiff to introduce testimony *tending to show there was no such consent?* We maintain that it was, and that the county court erred in rejecting the testimony.

4. The plaintiff is entitled to her own earnings, notwithstanding she has a father living.

Where a father wholly abandons his children, he is not, we insist, entitled to their earnings.—*Benson vs. Remmington,* 2 Mass. Rep. 113.—*Nightingale* vs. *Withington,* 15 Mass. 272.

*Lastly,* we inquire what effect the death of Woodworth, the master, had upon the apprenticeship, if it did not dissolve it? Did it make void the indenture, or only place it in the power of the plaintiff to avoid it if she choose? If it made void the indenture, then the plaintiff did not serve the defendant under it, and she can recover for her services. If it only placed it in her power to avoid it, if she· choose, then she is entitled to recover upon a *quantum meruit* for her labor, because she did avoid it by leaving the defendant before her time of service expired.

*Merrill and Spaulding contra.*

The opinion of the court was pronounced by

PHELPS, J.—The only serious question in this case, arises out of the charge of the court to the jury, upon the evidence

as exhibited at the trial. The jury having determined the WASHINGTON, March, 1834. facts, we may to the purposes of this discussion, assume the facts as found by them, and enquire whether the law, as ex- Louisa Phelps vs. Daniel Culver. plained to them in the charge, appears, when applied to the facts found, to have been correctly laid down.

No question is made as to the legality or validity of the original indenture, by which the plaintiff was bound as an apprentice to Woodworth ; but it is insisted, first, that the indenture was vacated *ipso facto* upon the decease of Woodworth, and secondly, that the apprentice was not by law assignable. This last position is not directly pertinent to this case, inasmuch as the defendant is the legal representative of Woodworth, and, so far as any rights or liabilities survive, they rest in or devolve on him. The question whether an apprentice is assignable to all, and if so, to what extent and under what circumstances, is however nearly allied to the question as to the effect of the decease of the master, and serves to illustrate the nature of the original contract. In this point of view, it may be useful to discuss it, as whether determined one way or the other it may furnish a strong argument from analogy.

It seems agreed on all hands, that an indenture of appren, ticeship becomes voidable, at least, upon the decease of the master ; and that an assignment of an apprentice, by the master while living, is subject to be avoided by the apprentice, with the concurrence of his parent or guardian. But it is insisted, in behalf of the plaintiff in this case, that the indenture became void, strictly speaking, upon the decease of Woodworth, and as to all subsequent proceedings, is to be regarded as a nullity.

The distinction between an instrument which is *void* and one which is *voidable merely*, is well understood ; the former being a nullity to every purpose, and the latter being valid and effectual, until some act of avoidance is done, by the party entitled to avoid it. And even then, it may be effectual, to many purposes ;. for even the right of avoiding a contract must be, to some extent, controlled by established rules of law, and considerations of natural and acknowledged equity between the parties.

The reason given, why an apprentice is not assignable, and why the contract does not survive to the executor is, that the contract is, in its nature, fiduciary, implying a personal trust and confidence. To a certain extent it is so. So far as instruction

Washington,
March,
1834.

Louisa Phelps
vs.
Daniel Culver.

and education are concerned, there is a personal confidence; and an executor or assignee may not, in this particular, be equally qualified or entitled to the same confidence as the orignal master; but as to the duty of maintenance, it requires only pecuniary ability, and may be discharged by one person as well as another. An executor or assignee may also possess equal or superior qualifications, in all respects, to the master. It would seem therefore, that every consideration, growing out of the fiduciary character of the contract, is satisfied, by treating it as voidable. It is for the benefit of the apprentice that the contract is relaxed, and it may be for his interest that the contract continue. It is therefore, a very proper case for the exercise of a right of election. If he elect to serve either an assignee or an executor, and all parties consent, no good reason can be given, why the law should interpose, and determine the contract, against the will of the parties.

That this is the correct view of the subject, is very clear from the authorities.

It has been repeatedly held, that an apprentice, serving under an assignee, by virtue of an assignment, gains a settlement by such service. And the decisions are the same, where the contract of assignment is made by the personal representatives of the master.—See Burr. sett. cases No. 91, 186.—2 Stra. 1115.—Douglass R. 70.—6 T. R. 452.—15 East. 59. —1 Mau. and Sel. 377. Yet where an indenture is void, no settlement is gained by service under it.—See 3 T. R. 353. —8 Do. 379.—3 Barn. and Al. 584.—5 Maul. and S. 257.

Again, the covenant *for maintenance* in the indenture is not discharged, but the executor is liable.—Salk. 66. 2 Stra. 1266. —Reeve D. Rel. 345.—Swift's Dig. 63.—2 Kent's Com. 265. —In *Rex* vs. *Peck*, Salk. 66, Holt says "the covenant for instruction fails, but he remains an apprentice *quoad maintenance*."

In Salk. 68, (Parishes of Castor and ——,) it is said, that an apprentice is not assignable, yet the assignment is *voidable merely* —See also 1 Stra. 48.

In *Barber* vs. *Dennis*, (Salk. 68,) which was trover for apprentices' earnings, brought by the widow of the master, it is said, "what the apprentice gains, he gains for his master, and whether legally an apprentice or not, is no ways material; it is enough, if he be so *de facto*.

Reeve (Dom. Rel. 342,) recognizes the same doctrine. He says, an apprentice may bind himself, and this entitles the master to his earnings. Again, (p. 344,) "an apprentice is not assignable ; but if he serve he *gains the rights and incurs the duties* of an apprentice."

Swift puts it in on the same ground. These two writers also admit, that an executor is liable for the maintenance of an apprentice. They doubt the propriety of the rule ; but it is worthy of consideration, whether the apparent injustice or impropriety of the rule is not removed, by treating the contract as voidable merely. Upon this ground, so long as the apprentice continues to serve, it is equitable that the executor should maintain him. And if he elect to avoid the contract, and does so, it would seem that, upon common principles, the executor would thereafter be discharged.

In *Rex* vs. *Stockland,* (Doug. 70,) Ld. Mansfield says, if the apprentice continue, with the assent of all parties, and his own, it is a continuation of apprenticeship." Kent repeats this language ; and adds, that the master is entitled to the wages and fruit of the personal labor of the apprentice, while the relationship continues, and the apprentice is in his service.

The cases relied upon by the plaintiff, are all consistent with this view of the subject. *Wadsworth* vs. *Gay,* (2 Petersd. 33) was an action on the covenant to instruct, which the court held, failed, by the decease of the master ; yet they held, that the apprenticeship continued, to the purpose of maintenance. *Baxter* vs. *Barfield,* was an action on the bond, conditional for the faithful service of the apprentice. The court held the contract voidable, on the decease of the master.

The result of the cases seems to be, that, so far as respects the covenant to instruct, it is strictly fiduciary ; and upon the decease of the master, is voidable, by either party ; the contract for service is voidable, by the apprentice ; but the contract for maintenance is still binding, and if any thing is stipulated to be paid, upon the expiration of the term, the apprentice is entitled to it, if he serve out his term. This last proposition, although not expressed in terms in any of the cases cited, seems to follow as a necessary consequence from the principles adopted. If the apprentice "gains the right of an apprentice," in the language of Judge Reeve, he gains those certainly which are stipulated for in his own particular case. In this case, the plaintiff is entitled by the indenture, to certain

Washington,
March,
1834.
———————
Louisa Phelps
vs.
Daniel Culver.

clothing &c , on becoming of age. Does it admit of a doubt, that she would be entitled to those perquisites, upon serving the full term, and that the defendant would be responsible for them? If so, then certainly the contract is not void.

Let us apply these general rules to this case. There is no contract for instruction in the case. The contract for service, we may consider for the present as voidable, and the contract for maintenance, and the payments to be made at the expiration of the apprenticeship, as binding upon the defendant. It is to be remarked, that the plaintiff's own consent to serve the plaintiff, while she did serve him, is apparent upon the statement of the case ; and the consent of the overseer of the poor, her legal guardians, is found by the jury. This is all that is required, to bring her case within the rule laid down.

But it is argued, that the plaintiff has avoided the contract, by leaving the service of the defendant ; and that, upon this avoidance, she is entitled to compensation for her services, *quantum valebant*. This raises another question. Supposing the contract of apprenticeship to be determined, by the avoidance of the plaintiff, does that avoidance operate prospectively only, or does it operate retrospectively, and entitle the plaintiff to disregard altogether the contract, under which the services were rendered ?

In discussing this question, we must distinguish this case from that of an infant, who enters into a contract of apprenticeship alone, and without the concurrence of parent or guardian. Whether an infant could, in such case, avoid the contract, in the sense contended for, and discard the indenture altogether, is a question not necessary to be determined, on the present occasion. Here was a binding, by the person standing *in loco parentis*, and whether the assent of the plaintiff was originally necessary or not, still if once given, it could not be revoked.

Admitting the right of the plaintiff to determine the apprenticeship, still that right, as has already been remarked, must be in some degree controlled by established legal principles, and by considerations of acknowledged equity between the parties. Had the plaintiff served out the term, the service would be deemed to have been rendered under the indenture, and would entitle her to the full benefit of its stipulations. The contract for her maintenance would have still remained in force. This she could not discharge, as it was made by the overseer of

the poor ; and courts are strongly inclined against allowing the <span style="float:right">Washington, March, 1834.</span> privilege of infant, unless the contract can be rescinded *in toto*. The injustice of varying the terms, after the service has been Louisa Phelps rendered, is manifest ; and although that injustice might be *vs.* Daniel Culver. unavoidable, in a case, where the infants privilege must be yielded to, in respect to a contract made by himself, yet it ought not to be incurred, in respect to a contract, deliberately made, with the assent and concurrence of the parent, or guardian. Nay, this is a contract made by the guardian alone. It was not voidable in the outset as the contract of an infant, nor liable to the objection of having been made by one wanting legal discretion. The very ground, therefore, of the infant's privilege, fails in this case. The law indeed gives her an election to serve the administrator or not ; and this, not upon the ground of any original defect of obligation in the contract itself, but on account of the fiduciary character of the trust, on the part of the master. It is, therefore, a case, where, if she elect to continue the apprenticeship, it is continued in its original terms. There is no reason why she should discard these— they were settled in the outset, not by an infant, but by persons fully competent to contract. Indeed, with respect to them, she has no privilege to exercise. The fallacy in the plaintiff's argument, consists in confounding the principles applicable to this case, with those which govern the contracts of an infant. The cases are wholly dissimilar. In one case, the contract is originally voidable, for want of a legal competency in the party to make it ; in the other, an election is given to determine the subsisting relation between the parties, in consequence of reasons arising *ex post facto*. The privilege of an infant apprentice, arising upon the decease of the master, or an assignment by him, is totally different, and rests upon different principles from his ordinary privilege, in respect to his contracts.

These remarks may serve to explain the language of the books already cited. Ld. Mansfield calls the relation, subsisting in a case like the present, "a continuation of the apprenticeship." Reeves says, the apprentice, if he consent to serve, " *gains the rights* and incurs the duties of an apprentice." Kent says, that " the master is entitled to the wages and fruits of the personal labor of the apprentice," &c. and in *Barber* vs. *Dennis*, the court denominate a person situated like the plaintiff, " an apprentice *de facto*." All this is utterly

Washington,
March,
1834.

Louisa Phelps
vs.
Daniel Culver.
inconsistent with the idea, that the contract of apprenticeship may be discarded by the apprentice, and that he may reclaim the fruits of his labors. We are therefore of opinion, that the right of the plaintiff to determine the apprenticeship, is not derived from the ordinary privilege of infants, in relation to their contracts, but grows out of reasons peculiar to the relation between master and apprentice ; that it is a mere right of election, to continue the relation or dissolve it—and that she cannot, by dissolving it, avoid the terms of the original contract, in regard to her previous service under it, and recover for such services in this action. We have, thus far, discussed this case, upon common principles, applicable generally to the relation of master and apprentice. But it is worthy of consideration, whether the case here presented, does not stand upon a peculiar footing. It is certainly true, that a binding out by overseers of the poor, depends upon different principles, in many respects, from other cases of apprenticeship. In the first place, it is done by an authority derived from statute, and does not depend upon the relation of parent and child, or guardian and ward. In the second place, the consent of the apprentice cannot be necessary ; and, in the third place, the object may be maintenance alone.

These peculiarities have certainly an important bearing upon the rules, which are to govern the subject. If instruction, in any particular trade, is not an object of the contract, it loses much of its fiduciary character ; and if maintenance is the main object, we have seen already, that the obligation may well be transferred. If the overseers have authority to bind out, without the assent of the apprentice, (and if they have not, the statute is nugatory,) they doubtless have the power to bind anew, upon the decease of the master, without such consent. It follows that they have also the right to assent to a transfer of the apprentice. If then there be a transfer, or assignment, with the assent of the overseers, it is made with the assent of all parties, whose assent is necessary to its validity. Besides, in this case, the overseers have a right to insist upon a performance of the contract by the defendant, as the representative of Woodworth ; and he has a right to insist, on his part, upon a performance of the service. Indeed, in this view of the subject, the controversy, in a legal sense, would exist, between the defendant and the overseers, the plaintiff being merely passive. Hence it was decided, in the case cited from

Petersdorf, that such an apprentice is assignable, and by this
we are to understand, that it may be done, without his assent.
—See *Rex* vs. *Arnesby*, 3 B. and Alderson 584.—2 Kent's
Com. 264.

WASHINGTON,
*March,*
1834.

Louisa Phelps
*vs.*
Daniel Culver.

The decease of the master, in this case, does not necessarily
defeat the purpose of the apprenticeship; and although the
trust is to some extent fiduciary, so far as the fitness of the
master to have charge of the apprentice is concerned, yet of
this the overseers are to judge, and all difficulty, on this point,
is removed by their assent.

In this view of the case, it is stripped of all difficulty; the
contract remains in force, notwithstanding the decease of
Woodworth, or, if we are to consider it as a case of assignment,
we have authority for saying that the assignment is binding.

In short, the question becomes simply this, whether a pau-
per, put out to service by the overseers of the poor, under the
statute, can annul the contract of the overseers, and recover
in assumpsit for his services. If this can be done, the statute,
and all authority derived from it, is nugatory.

If we are correct in this conclusion, the offer of the plaintiff
to show her unwillingness to serve the defendant, is already dis-
posed of. In this last point of view, her unwillingness is of no
importance; and even if it were a case of ordinary apprentice-
ship, her reluctance could not vary the effect of her actual
service.

There is another exception, which requires to be noticed;
and that relates to the rejection of Harrington's out-door de-
clarations. It is sufficient, on this point, to say, that the evi-
dence offered did not conflict with his testimony, and did not
tend to impeach him; nor was it proper as evidence in chief.

It is not necessary to pass upon the other point made, as to
the right of the plaintiff's parents to her services, as the case
does not require it.

On the whole, we consider that there is no error in the pro-
ceedings of the county court, and judgment is affirmed.